OSCN Found Document:DAVIS v. OKLAHOMA DEPARTMENT OF CORRECTIONS

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 DAVIS v. OKLAHOMA DEPARTMENT OF CORRECTIONS
2016 OK CIV APP 23
Case Number: 113773
Decided: 03/14/2016
Mandate Issued: 04/14/2016
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2016 OK CIV APP 23, __ P.3d __

 

ROGER DAVIS, Plaintiff/Appellant,
v.
THE OKLAHOMA DEPARTMENT OF CORRECTIONS and ROBERT PATTON, as director, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ROGER H. STUART, TRIAL JUDGE

AFFIRMED AS MODIFIED AND REMANDED FOR FURTHER PROCEEDINGS

John M. Dunn, THE LAW OFFICES OF JOHN M. DUNN, PLLC, Tulsa, Oklahoma, for Plaintiff/Appellant
E. Scott Pruitt, ATTORNEY GENERAL, Justin P. Grose, ASSISTANT ATTORNEY GENERAL, OKLAHOMA OFFICE OF THE ATTORNEY GENERAL LITIGATION SECTION, Oklahoma City, Oklahoma, for Defendants/Appellees

JOHN F. FISCHER, JUDGE:

¶1 Roger Davis appeals the order granting the Oklahoma Department of Corrections' motion to dismiss his petition seeking declaratory and injunctive relief regarding the Oklahoma Sex Offenders Registration Act, 57 O.S.2011 §§ 581 through 590.2 (Registration Act). Davis's petition alleges that the application of the Registration Act in his case violates his constitutional rights. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp. 2013, ch. 15, app. 1, and the matter stands submitted without appellate briefing.[1] We find no violation of the Ex Post Facto Clause or the Equal Protection Clause as asserted by Davis and affirm the district court's order dismissing his petition in that regard. However, because the district court did not address the validity of Davis's due process claim, the case must be remanded for that determination.

BACKGROUND

¶2 Davis was convicted in Indiana on October 8, 1997, and sentenced to five years in prison for the crime of "Lewd or Indecent Proposals/Acts to a Child." That crime is one requiring registration with the Department of Corrections by any person subject to the Registration Act. 57 O.S. Supp. 2010 § 582.[2] After serving less than two years of his Indiana sentence, Davis was released from prison. He entered a plea of nolo contendere and received a deferred sentence in October of 1998. Davis completed all requirements of his sentence and probation in 2002. Davis moved to Oklahoma in October of 2013 and registered with the Department as a sex offender. He was assigned risk level three: "a designation that the person poses a serious danger to the community and will continue to engage in criminal sexual conduct." 57 O.S.2011 § 582.5(C)(3).

¶3 Davis filed his petition seeking declaratory and injunctive relief. He alleged that the Registration Act constituted an ex post facto law and denied him the equal protection of the laws in violation of the Oklahoma and United States Constitutions. The Department removed the case to the United States District Court for the Western District of Oklahoma and filed a motion to dismiss, arguing that the petition failed to state a claim on which relief could be granted. The federal court granted the motion in part, ruling that Davis had not stated a claim regarding federal ex post facto law. The federal court determined that factual issues precluded resolution of the Department's motion concerning Davis's other claims and remanded the case back to the Oklahoma County district court.

¶4 Davis filed an amended petition in district court, asserting only Oklahoma constitutional theories of recovery. The Department renewed its motion to dismiss. Davis appeals the district court's order, which granted the Department's motion to dismiss and found that the petition "failed to state a claim on which relief can be granted with respect to his ex post facto and equal protection claims under the Oklahoma Constitution."

STANDARD OF REVIEW

¶5 The purpose of a motion to dismiss a petition for failure to state a claim is to test the law that governs the claim rather than the facts asserted in support of that claim. Kirby v. Jean's Plumbing Heat & Air, 2009 OK 65, ¶ 5, 222 P.3d 21 (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)). On review of an order dismissing a petition all allegations in the petition are taken as true. Gens v. Casady Sch., 2008 OK 5, ¶ 8, 177 P.3d 565. Appellate review of a motion to dismiss involves de novo consideration of whether the petition is legally sufficient. Indiana Nat'l Bank v. Dep't of Human Servs., 1994 OK 98, ¶ 2, 880 P.2d 371. De novo review requires plenary, independent, and non-deferential examination of the trial court's rulings of law. In re Estate of Bell-Levine, 2012 OK 112, ¶ 5, 293 P.3d 964.

ANALYSIS

¶6 Davis's petition alleges the facts of his conviction and incarceration in Indiana, his move to Oklahoma, registration with the Department pursuant to the Registration Act and his classification as a level three risk. He asserts that because of his risk assignment, he is required to register "for life," although had he been convicted in Oklahoma on October 8, 1997, rather than in Indiana, he would have been required to register for only ten years. He contends that application of the Registration Act by the Department violates the prohibition against ex post facto laws and denies him the equal protection of the law. Both theories of recovery assert violations of the Oklahoma Constitution.

I. The Ex Post Facto Argument

¶7 As the parties recognize, the Oklahoma Supreme Court's decision in Starkey v. Oklahoma Department of Corrections, 2013 OK 43, 305 P.3d 1004, is the leading case regarding Davis's ex post facto argument. In 1998, Starkey pled nolo contendere and received a deferred sentence in Texas. The crime would have required registration for a period of ten years had it been committed in Oklahoma. Starkey moved to Oklahoma sometime in 1998 and registered with the Department as a sex offender. In 2004, the Registration Act was amended to begin the registration period from the date of completion of the sex offender's sentence or probation rather than from the date of conviction. In 2007, the Act was amended again to implement a three-level classification system and lengthen the registration period. After the 2007 amendment, the Department notified Starkey that he had been assigned a level three classification, requiring him to register for life. Starkey challenged the Department's classification.

¶8 The Starkey Court held that the Registration Act was penal in nature, and the registration period could not be extended pursuant to a subsequent amendment without violating "the prohibition on ex post facto laws provided in Article 2, § 15 of the Oklahoma Constitution." Id. ¶ 79. The Court rejected Starkey's argument that he should be subject to the version of the Registration Act in effect on the date he was convicted in Texas. "The correct date to apply is when Starkey became subject to [the Registration Act] by entering and intending to be in Oklahoma after his conviction." Id. ¶ 82 (emphasis in original) (footnote omitted). The Court found that neither the 2004 nor the 2007 amendments to the Registration Act could be applied to Starkey, because he first became subject to registration when he moved to Oklahoma in 1998, prior to the effective date of either amendment.

¶9 In its ex post facto analysis in subsequent cases, the Oklahoma Supreme Court has consistently applied the version of the Registration Act in effect when a person convicted in another state first becomes subject to the Registration Act by moving to Oklahoma. See Bollin v. Jones, 2013 OK 72, 349 P.3d 537; Burk v. State ex rel. Dep't of Corr., 2013 OK 80, 349 P.3d 545; Ransdell v. State ex rel. Oklahoma Dep't of Corr., 2013 OK 106, 322 P.3d 1064. Starkey and these cases are dispositive of Davis's argument that the Ex Post Facto Clause requires application of the version of the Registration Act in effect on the date of his Indiana conviction. It does not. The district court's order dismissing Davis's petition for failure to state a claim for violation of the Ex Post Facto Clause of the Oklahoma Constitution is affirmed.

II. The Equal Protection Argument

¶10 Davis also argues that the Department's application of the Registration Act denies him the equal protection of the law. His argument takes two forms. First, Davis argues that he is being treated differently than persons convicted in Oklahoma on the date he was convicted in Indiana. Second, he contends that the Registration Act infringes on his fundamental right to travel, have custody of his children, chose with whom he can live and whom he can marry.

¶11 At the oral argument in this case, Davis confirmed that his intent, in filing his amended petition, was to assert an equal protection claim based only on the Oklahoma Constitution. Oklahoma does not have a separate Equal Protection Clause like that contained in the Fourteenth Amendment to the United States Constitution. Fair Sch. Fin. Council of Okla., Inc. v. State, 1987 OK 114, ¶ 54, 746 P.2d 1135. Nonetheless, the Oklahoma Supreme Court has identified "a functional equivalent of that clause in the anti-discrimination component of our state constitution's due process section, Art. 2, § 7, Okla. Const." Ross v. Peters, 1993 OK 8, n.29, 846 P.2d 1107. See also Torres v. Seaboard Foods, LLC, 2016 OK 20, ¶ 31, ___ P.3d ___. Oklahoma's constitution "contains a built-in anti-discrimination component which affords protection against unreasonable or unreasoned classifications serving no 'important governmental objectives.'" Fair School Finance, 1987 OK 114, n.48 (quoting Davis v. Passman, 442 U.S. 228, 234, 99 S. Ct. 2264, 2271 (1979)). "A classification is not to be measured by whether it discriminates, but rather by whether it discriminates impermissibly or invidiously." Ross, 1993 OK 8, ¶ 20.

A. The Discriminatory Classification Argument

¶12 The first component of Davis's equal protection argument relies on Hendricks v. Jones, 2013 OK 71, 349 P.3d 531. Citing Hendricks, Davis asserts that "discrimination based on the jurisdiction in which the conviction occurred has no rational basis for protecting the public." Id. ¶ 14. Hendricks was convicted of a sex crime in California in 1982. He moved to Oklahoma in 2009. The Registration Act was adopted effective November 1, 1989, and did not require registration by persons convicted in Oklahoma prior to that date or persons who moved to Oklahoma after being convicted in another jurisdiction prior to that date. However, when Hendricks moved to Oklahoma, the version of the Registration Act in effect required registration by any person who moved to Oklahoma after November 1, 1989, after being convicted in another jurisdiction, regardless of the date of conviction. Hendricks argued that requiring him to register, when those convicted in Oklahoma on the same date were not, denied him the equal protection of the law. The Court agreed.

Applying [the Registration Act's] requirements to sex offenders who now reside in Oklahoma and were convicted in another jurisdiction prior to [the Registration Act's] enactment when an Oklahoman convicted in Oklahoma of a similar offense prior to [the Registration Act's] enactment is not required to register, violates a person's equal protection guarantees.

Id. ¶ 17.

¶13 Davis argues that he is being denied "equal protection guarantees" because he is being treated differently than those who were convicted of a sex crime in Oklahoma on the date of his Indiana conviction. He claims the holding in Hendricks prohibits this type of discrimination based solely on the jurisdiction of his conviction. As Davis correctly points out, the Registration Act in effect in October 1997, when he was convicted, required a maximum registration period of ten years. However, when he moved to Oklahoma in October 2013 the version in effect required a fifteen-year minimum registration period and employed a classification system that, in Davis's case, resulted in a lifetime registration requirement. Compare 57 O.S. Supp. 2009 §§ 582.5 and 583, with 57 O.S. Supp. 1995 § 583. Unlike the circumstances in Hendricks, however, Davis's conviction did not occur prior to adoption of the Registration Act in 1989. The class at issue in Hendricks was "persons residing in Oklahoma after November 1, 1989, who were convicted of a sex crime in another jurisdiction prior to . . . November 1, 1989." Hendricks, 2013 OK 71, ¶ 10. Nonetheless, Davis asks us to extend the holding in Hendricks and apply the version of the Registration Act in effect on the date of his Indiana conviction, even though that was long before his move to Oklahoma. Equal protection of the law does not mandate that result.

¶14 The initial question in equal protection cases is to "identify the population and whether a distinction or classification has been drawn within that population." Rivas v. Parkland Manor, 2000 OK 68, ¶ 9, 12 P.3d 452. Classification based on the date of conviction, for those convicted after adoption of the Registration Act, is not the relevant "class." "[T]he controlling registration requirements are those which were in effect when an individual meeting the criteria of a sex offender, convicted in another jurisdiction, enters Oklahoma and becomes subject to [the Registration Act]." Burk v. State ex rel. Dep't of Corr., 2013 OK 80, ¶ 11, 349 P.3d 545 (citing Starkey, 2013 OK 43, 305 P.3d 1004). Accord Bollin v. Jones, 2013 OK 72, 349 P.3d 537 (enjoining application of a version of the Registration Act amended after a person convicted in another jurisdiction moved to Oklahoma); Ransdell v. State ex rel. Okla. Dep't of Corr., 2013 OK 106, 322 P.3d 1064 (holding unconstitutional application of the 2007 level-assignment system to a person who moved to Oklahoma in 1999). In each of the Supreme Court's post-Starkey cases, except Hendricks, some version of the Registration Act was applied. The terms of the applicable registration requirements were determined pursuant to the version of the Registration Act in effect when the sex offender moved to Oklahoma.

¶15 Davis does not argue that he is a member of a suspect class. Cf. Butler v. Jones ex rel. State ex rel. Dep't of Corr., 2013 OK 105, ¶ 12, 321 P.3d 161 (eliminating registration requirement for persons with expunged out-of-state conviction satisfies the rational basis test for equal protection purposes). Nor does Davis argue that he is being treated differently than any other person who became subject to the Registration Act on the date he moved to Oklahoma. That is, however, the relevant classification required by the Oklahoma Supreme Court in Starkey. Burk is dispositive of Davis's equal protection argument based on discriminatory classification. The Burk Court held it was unconstitutional to apply the 2007 level-assignment system to a resident convicted in another jurisdiction, who moved to Oklahoma in 2004. But the Court remanded the case for determination of whether Burk moved to Oklahoma before, or after, the effective date of the 2004 amendment to the Registration Act and, therefore, whether his required registration period was for ten years from his conviction or for ten years from the completion of his sentence. Equal application of the Registration Act to all those who become subject to the Act at the same time is a "sufficient safeguard against arbitrary discrimination." Butler, 2013 OK 105, ¶ 11. "The equal protection clause is satisfied if the statute applies alike or in reasonable degree to all parties in the same class." Daube v. Okla. Tax Comm'n, 1944 OK 218, ¶ 29, 152 P.2d 687. Davis has failed to show that application of the version of the Registration Act in effect when he moved to Oklahoma draws a "distinction or classification" within the population of which he is a member. Rivas, 2000 OK 68, ¶ 9.

B. The Fundamental Rights Argument

¶16 Davis's second equal protection argument is that the Registration Act unconstitutionally infringes on his fundamental rights to travel, have custody of his children, choose with whom to live and whom to marry.[3] Davis's argument focuses on his right to travel. The United States Supreme Court "long ago recognized that . . . our constitutional concepts of personal liberty unite to require that all citizens be free to travel . . . uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement." Shapiro v. Thompson, 394 U.S. 618, 629, 89 S. Ct. 1322, 1329 (1969). A constitutional right to travel is "fundamental," and one that has been "firmly established and repeatedly recognized." United States v. Guest, 383 U.S. 745, 757-58, 86 S. Ct. 1170, 1178 (1966). It is generally recognized that the right to travel is protected by the Privileges and Immunities Clause of the United States Constitution found in Article IV, § 2, and the Fourteenth Amendment to that Constitution. Saenz v. Roe, 526 U.S. 489, 498, 119 S. Ct. 1518, 1524 (1999). As it relates to this case, the right to travel ensures that once Davis relocated to Oklahoma, he was entitled to the same privileges and immunities enjoyed by the citizens of this State. As the Saenz Court observed, citizens may select the state in which they choose to reside; "States, however, do not have any right to select their citizens." Id. at 511, 119 S. Ct. at 1520.

¶17 Davis argues that equal protection of the law means that he is entitled to be treated for registration purposes like all others subject to the Registration Act on the date of his Indiana conviction. We find this argument unpersuasive. First, Saenz and Shapiro are distinguishable. Both decisions declared residency requirements imposed on the receipt of welfare benefits provided by the state to be unconstitutional on the basis that denying benefits available to state citizens until new citizens of the state had resided therein for one year impermissibly infringed on the right to travel. The problem in Shapiro and Saenz is not present here. Davis will not be entitled to the "benefits" of the version of the Registration Act in effect when he was convicted in Indiana no matter how long he resides in Oklahoma.

¶18 Second, Davis is not asserting an equal protection claim based on federal law; he relies solely on the equal protection provision of the Oklahoma Constitution. He finds recognition of a State right to travel in Edmondson v. Pearce, 2004 OK 23, 91 P.3d 605, cert. denied, Tally v. Edmondson, 543 U.S. 987, 125 S. Ct. 495 (2004), and Hendricks v. Jones, 2013 OK 71, 349 P.3d 531. Edmondson was decided based on the right to travel protected by the United States Constitution, and Hendricks was decided on the basis of a discriminatory classification not the infringement of a fundamental right. Likewise, Butler v. Jones ex rel. State ex rel. Dep't of Corr., 2013 OK 105, 321 P.3d 161, is not a "fundamental rights case." In Butler, the Court found that eliminating the registration requirement for Oklahoma residents whose out-of-state convictions were expunged did not implicate the fundamental rights of persons convicted in Oklahoma and required to register even though their convictions were subsequently expunged. The relationship between this holding and the right to travel is, at best, tangential. Davis has not pointed to any Oklahoma authority recognizing a right to travel pursuant to State law independent of his privileges and immunities as a United States citizen.

¶19 However, the Department concedes that the Registration Act could impact some of Davis's fundamental rights. Because those convicted in Oklahoma are subject to the version of the Registration Act in effect on the date of their conviction, Davis contends that, to be treated the same, the Department is required to apply the version of the Registration Act in effect when he was convicted. But, when Davis was convicted in Indiana, the Oklahoma Registration Act did not apply to him, nor was it part of his Indiana sentence. The same is true regarding the sex offender registration laws of any state other than Indiana. Some version of a sex offender registration law was in effect in every state when Davis chose to move from Indiana. See Hendricks, 2013 OK 71, n.11. Consequently, Davis's fundamental rights were affected regardless of where he chose to move. Nonetheless, with respect to these fundamental rights, once Davis moved to Oklahoma he was treated no differently than any other person convicted of a sex crime in Oklahoma on that date. The restrictions on Davis's child custody, housing and so forth apply with equal force to every other convicted sex offender living in Oklahoma. Oklahoma's Constitution does not require the state to treat Davis like something he is not, a person subject to the Registration Act on the date he was convicted in Indiana. "[T]hings which are different in fact or opinion [are not required] to be treated in law as though they were the same." Kirk v. Bd. of Cnty. Comm'rs, Muskogee Cnty., 1979 OK 80, ¶ 6, 595 P.2d 1334. Accord Brown v. Lillard, 1991 OK 74, 814 P.2d 1040.

¶20 Nonetheless, Davis argues that application of the version of the Registration Act in effect when he moved to Oklahoma, rather than the version in effect when he was convicted in Indiana, fails the strict scrutiny test. Both Hendricks and Butler were decided on the basis of the rational-basis test, the lowest threshold of analysis in equal protection cases. Butler, 2013 OK 15, ¶ 12. Davis claims "strict scrutiny" is the appropriate test in this case because his fundamental rights are at issue. Davis is correct. As the Hendricks court recognized, equal protection analysis requires strict scrutiny of legislative classifications affecting the exercise of fundamental rights. Hendricks, 2013 OK 71, ¶ 9. This heightened standard of review is satisfied if the law is "substantially related to an important governmental interest." Anderson v. Eichner, 1994 OK 136, n.35, 890 P.2d 1329. See also Shapiro v. Thompson, 394 U.S. at 634, 89 S. Ct. at 1322 (no equal protection violation if the law is "necessary to promote a compelling governmental interest"). The Oklahoma Supreme Court has previously addressed this issue. "[N]otifying citizens of the presence of convicted sex offenders is a legitimate governmental objective and protecting Oklahoma citizens from sex offenders is a compelling state interest. Hendricks, 2013 OK 71, ¶ 17. "A sex offender registry is a valid tool for the state to use for public safety. The State may impose registration duties and may publish registration information as part of its punishment of this category of defendants." Starkey, 2013 OK 43, ¶ 78.

¶21 Davis has not shown that application of the Registration Act in effect when he moved to Oklahoma fails the strict scrutiny test. The district court's order dismissing Davis's equal protection claim is affirmed.

III. The Due Process Argument

¶22 Davis's final argument, assuming the 2013 version of the Registration Act applies, asserts a due process violation by the manner in which he was classified. Davis's Amended Petition does not articulate this theory. However, there is a general reference to constitutionally protected liberty interests, and Davis clearly asserted a due process claim in his Response to the Department's motion to dismiss. In addition, Davis was not given the opportunity to amend his petition to more clearly assert this claim. "On granting a motion to dismiss a claim for relief, the court shall grant leave to amend if the defect can be remedied . . . ." 12 O.S.2011 § 2012(G). "Interests protected by due process are not always 'created by the [Federal] Constitution. Rather, they are [often] created and their dimensions are defined' by some independent source, which consists quite frequently of a state statute or rule entitling the person to certain benefits." Phillips v. Williams, 1980 OK 25, ¶ 5, 608 P.2d 1131 (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972)). Consequently, to the extent that Davis can state a claim based on a violation of due process, he must be permitted to do so.

¶23 Davis alleged in his petition that he was not convicted of an "aggravated" sex offense and that he is not a "habitual" sex offender. He now argues, therefore, that there was no basis on which to classify him as a "Level three" offender. At the time Davis received his level assignment, the statute provided:

C. The offense for which the person is convicted shall serve as the basis for the level assigned to the person. In selecting the level assignment, the sex offender level assignment committee shall use the following general guidelines:

1. Level one (low): a designation that the person poses a low danger to the community and will not likely engage in criminal sexual conduct;

2. Level two (moderate): a designation that the person poses a moderate danger to the community and may continue to engage in criminal sexual conduct; and

3. Level three (high): a designation that the person poses a serious danger to the community and will continue to engage in criminal sexual conduct.

57 O.S.2011 § 582.5. For purposes of the Department's motion to dismiss, we must take as true Davis's allegation that he is not a habitual sexual offender. See Great Plains Fed. Sav. and Loan Ass'n v. Dabney, 1993 OK 4, n.3, 846 P.2d 1088. Consequently, the basis for classifying Davis as a "Level three" offender is not supported by this record.

¶24 Further, Davis contends that not only was there no evidentiary basis for his "Level three" assignment, but also that he was not afforded a hearing to bring this fact to the Department's attention or provided a procedural mechanism to challenge the classification decision. The applicable version of the statute provides:

D. The sex offender level assignment committee, the Department of Corrections, or a court may override and increase the level assignment only if the entity:

1. Believes that the level assignment assessed is not an accurate prediction of the risk the offender poses to the community; and

2. Documents the reason for the override in the case file of the offender.

Provided, in no event shall the sex offender level assignment committee, the Department of Corrections, or a court override and reduce a level assigned to an offender as provided in subsection C of this section.

57 O.S.2011 § 582.5. Due process analysis indicates that:

[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

State ex rel. Bd. of Regents of The Univ. of Okla. v. Lucas, 2013 OK 14, ¶ 29, 297 P.3d 378, (quoting Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S. Ct. 893, 903 (1976)). It is apparent from the order appealed that the district court did not perform the due process balancing test required by Lucas, no doubt because that claim was not articulated in the text of Davis's petition. Nonetheless, Davis's petition "must not be dismissed for failure to state a legally cognizable claim unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle the plaintiff to relief." Tuffy's, Inc. v. City of Oklahoma City, 2009 OK 4, ¶ 6, 212 P.3d 1158. We cannot make that determination in the "first-instance" on appeal. Evers v. FSF Overlake Assocs., 2003 OK 53, ¶ 18, 77 P.3d 581. Therefore, this case must be remanded to the district court for that determination.

CONCLUSION

¶25 The district court's order dismissing Davis's petition with respect to his theories of recovery based on alleged violations of the prohibition against ex post facto laws and the functional equivalent of the federal Equal Protection Clause found in the Oklahoma Constitution is affirmed. That order is modified to grant Davis leave to amend his petition to assert a theory of recovery based on an alleged due process violation pursuant to the procedure deemed appropriate by the district court after remand.

¶26 AFFIRMED AS MODIFIED AND REMANDED FOR FURTHER PROCEEDINGS.

GOODMAN, C.J., and WISEMAN, P.J., concur.

FOOTNOTES

[1] Davis's motion to file supplemental briefing in the appellate court is denied. After oral argument in this case, we find additional briefing is unnecessary.

[2] Unless otherwise noted, citations will be to the version of the Registration Act in effect in October 2013 when Davis moved to Oklahoma.

[3] Davis misstates the effect of section 590.1 of the Registration Act on his right to marry. The statute provides: "Nothing in this subsection shall prohibit married persons, both of whom are required to register as sex offenders, or two or more blood relatives who are required to register as sex offenders, from residing in any individual dwelling during the term of registration as a sex offender." Further, as the parties conceded during oral argument, the record does not disclose either Davis's marital or familial status.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 114, 746 P.2d 1135, 58 OBJ 3282, Fair School Finance Council of Oklahoma, Inc. v. State
Discussed at Length
 1991 OK 74, 814 P.2d 1040, 62 OBJ 2163, Brown v. Lillard
Discussed
 1993 OK 4, 846 P.2d 1088, 64 OBJ 334, Great Plains Federal Sav. and Loan Ass'n v. Dabney
Discussed
 1993 OK 8, 846 P.2d 1107, 64 OBJ 440, Ross v. Peters
Discussed at Length
 1994 OK 98, 880 P.2d 371, 65 OBJ 2520, Indiana Nat. Bank v. State Dept. of Human Services
Discussed
 1994 OK 136, 890 P.2d 1329, 65 OBJ 4037, Anderson v. Eichner
Discussed
 2003 OK 53, 77 P.3d 581, EVERS v. FSF OVERLAKE ASSOCIATES
Discussed
 2004 OK 23, 91 P.3d 605, EDMONDSON v. PEARCE
Discussed
 2008 OK 5, 177 P.3d 565, GENS v. CASADY SCHOOL
Discussed
 2009 OK 4, 212 P.3d 1158, TUFFY'S, INC. v. CITY OF OKLAHOMA CITY
Discussed
 2009 OK 65, 222 P.3d 21, KIRBY v. JEAN'S PLUMBING HEAT & AIR
Discussed
 2012 OK 112, 293 P.3d 964, IN THE MATTER OF THE ESTATE OF BELL-LEVINE
Discussed
 2013 OK 14, 297 P.3d 378, STATE ex rel. BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA v. LUCAS
Discussed
 2013 OK 15, 297 P.3d 1247, IN THE MATTER OF THE REINSTATEMENT OF WARNER
Cited
 2013 OK 43, 305 P.3d 1004, STARKEY v. OKLAHOMA DEPARTMENT OF CORRECTIONS
Discussed at Length
 1980 OK 25, 608 P.2d 1131, Phillips v. Williams
Discussed
 2013 OK 71, 349 P.3d 531, HENDRICKS v. JONES
Discussed at Length
 2013 OK 72, 349 P.3d 537, BOLLIN v. JONES
Discussed at Length
 2013 OK 80, 349 P.3d 545, BURK v. STATE ex rel. DEPT. OF CORRECTIONS
Discussed at Length
 2013 OK 106, 322 P.3d 1064, RANSDELL v. STATE ex rel. OKLAHOMA DEPT. OF CORRECTIONS
Discussed at Length
 2013 OK 105, 321 P.3d 161, BUTLER v. JONES ex rel. STATE ex rel. DEPT. OF CORRECTIONS
Discussed at Length
 2016 OK 20, TORRES v. SEABOARD FOODS, LLC
Cited
 1979 OK 80, 595 P.2d 1334, KIRK v. BD. OF CTY. COM'RS, MUSKOGEE CTY.
Discussed
 2000 OK 68, 12 P.3d 452, 71 OBJ 2366, RIVAS v. PARKLAND MANOR
Discussed at Length
 1944 OK 218, 152 P.2d 687, 194 Okla. 487, DAUBE v. OKLAHOMA TAX COMMN.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Cited
Title 57. Prisons and Reformatories
 Cite
Name
Level

 57 O.S. 583, Procedure for Registration
Cited
 57 O.S. 582.5, Sex Offender Level Assignment Committee
Discussed at Length
 57 O.S. 581, Short Title
Cited
 57 O.S. 582, Applicability of Act
Cited